IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:25-CV-81-FL

TYSHEA S. CHAMBERS,

Plaintiff/Claimant,

v.

FRANK J. BISIGNANO,
*Commissioner of Social Security*,

Defendant.

MEMORANDUM AND RECOMMENDATION

This matter is before the court on the parties' briefs filed pursuant to the Supplemental Rules for Social Security Actions. [DE-12, -14, -15]. Claimant Tyshea S. Chambers ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully reviewed the administrative record and the briefs submitted by the parties, it is recommended that the matter be remanded for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability and DIB and for SSI on September 2 and November 13, 2020, respectively, alleging disability beginning January 28, 2019. (R. 17, 279–92). The claims were denied initially and upon reconsideration. (R. 17, 79–134). The Administrative Law Judge ("ALJ") held three telephonic hearings: the first, on June 15, 2023, at which Claimant was represented by counsel and testified, was continued so more information could be obtained regarding Claimant's mental impairments, (R. 60); the second, held on October

24, 2023, was continued so more information could be obtained regarding income attributed to Claimant in 2022, (R. 64–66); and the third was held on April 9, 2024, at which Claimant, represented by counsel, and a vocational expert ("VE") both testified, (R. 67–78).[1] On April 29, 2024, the ALJ issued a decision denying Claimant's request for benefits. (R. 14–36). On March 31, 2025, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large

[1] The ALJ stated in the decision that the first two hearings "were postponed in order for the claimant and her representative to obtain and submit information regarding earnings since the alleged onset date," (R. 17), but that is not entirely accurate. Although at the outset of the first hearing there was a discussion about needing more information regarding the source of income reported for Claimant in 2022, (R. 39–43), the hearing did move forward. This was despite the ALJ's initial concern that Claimant indicated she could barely hear the ALJ because she was hearing "three people talking at the same time," which her counsel stated was a symptom of her impairment, i.e., hearing voices, and that he experienced the same issue with her during the prehearing preparations. (R. 40). Claimant then testified to being fired from one job for trying to stab a supervisor with a knife, (R. 46), being fired from another job for talking to herself while playing with a knife, (R. 47), and that she pushed a co-worker near a meat-processing machine because voices told her to, (R. 59). When asked if she was receiving any treatment, Claimant stated she had been given medication, and they wanted to send her to the hospital but that she had to complete blood work first. (R. 48–49). After she testified that she stabbed one friend for getting "smart" with her and chased another one around the house with a knife before throwing it at him, the ALJ stated he was granting a continuance so counsel could see when Claimant was going into the hospital and get some indication as to what was going on with her mental health. (R. 59–60).

or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with

the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found that Claimant had not engaged in substantial gainful employment since January 28, 2019, the alleged onset date. (R. 19). Next, the ALJ determined that Claimant had the severe impairments of depression, anxiety, and obesity and the non-severe impairments of bilateral carpal tunnel syndrome and spine disorder. (R. 20). At step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 21–22). Applying the special technique prescribed by the regulations, the ALJ found that Claimant's mental impairments had resulted in a moderate limitation in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding that Claimant had the ability to perform medium work with the following limitations:

> the claimant can lift and carry 50 pounds occasionally and 25 pounds frequently. She can sit for six hours, stand for six hours and walk for six hours. He [sic] can

> push and pull as much as he [sic] can lift and carry. The claimant is able to perform simple, routine and repetitive tasks and to perform simple work-related decisions. She can have occasional interaction with the public, coworkers and supervisors.

(R. 22–27). In making this assessment, the ALJ found Claimant's statements about her limitations to be not entirely consistent with the medical and other evidence of record. (R. 23).

At step four, the ALJ concluded Claimant was unable to perform any past relevant work. (R. 27). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Claimant can perform. (R. 27–28).

## V. DISCUSSION

Claimant contends that the ALJ erred in formulating the RFC in two ways: first, by failing to account for Claimant's moderate limitations in the area of concentrating, persisting, and maintaining pace; and second, by failing properly evaluate the medical opinion evidence in conformity with the regulations. Pl.'s Br. [DE-12] at 9–16; Pl.'s Reply [DE-15]. The Commissioner counters that substantial evidence supports the mental RFC, and the decision is sufficiently explained to permit meaningful judicial review. Def.'s Br. [DE-14] at 7–20.

The RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* SSR 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function

basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting SSR 96-8p); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

**A. Concentration, Persistence, or Pace**

Claimant contends the ALJ failed to account for Claimant's moderate limitation in the area of concentrating, persisting, or maintaining pace in the RFC. Pl.'s Br. [DE-12] at 9–12 (citing *Mascio v. Colvin*); Pl.'s Reply [DE-15] at 2–4. In *Mascio*, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitation in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d at 638 (*quoting Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits)). The court explained that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace," but also acknowledged there could be instances where a moderate limitation in concentration, persistence, or pace at step three does not require a limitation in the RFC; however, the failure to explain such a result is error requiring remand. *Id.* ("Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. . . . But because the ALJ here gave no explanation, a remand is in order."); *see also Shinaberry v. Saul*, 952 F.3d 113, 122 (4th Cir. 2020) (holding that ALJ's decision comported with *Mascio* where the

ALJ explained why evidence supported mental limitation to simple, routine, repetitive tasks and included limitations in the hypothetical to the VE). Thus, "pursuant to *Mascio,* once the ALJ made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in the RFC assessment, or explain why no such limitation is necessary." *Iva K. v. Soc. Sec. Admin.*, No. 1:19-CV-02954-JMC, 2020 WL 3060752, at *4 (D. Md. June 9, 2020).

In this case, the court agrees with Claimant that the ALJ did not account for Claimant's moderately limited ability to stay on task and did not explain why no such limitation was necessary. At step three, the ALJ found that Claimant had a moderate limitation in concentrating, persisting or maintaining pace. (R. 22). The ALJ explained that Claimant prepares meals, does household chores, and completes her personal care, and that she completes tasks, but it takes her longer. *Id.* The ALJ also considered that Claimant enjoys reading as a hobby, on mental status examinations she was attentive and engaged and her concentration was good, and at the consultative evaluation she appeared to have moderate difficulty sustaining concentration. *Id.* In crafting the RFC, the ALJ imposed a limitation to performing simple, routine, and repetitive tasks and simple work-related decisions with only occasional interaction with the public, coworkers, and supervisors. *Id.* As in the *Mascio* case, the ALJ's RFC here accounted for Claimant's ability to perform simple tasks but not her ability to stay on task, despite the ALJ's step 3 finding that while Claimant completes tasks, it takes her longer. (R. 22).

The Commissioner suggests this case is distinguishable from *Mascio* and that the court can conduct a meaningful review of the ALJ's decision regarding Claimant's moderate limitation in concentrating, persisting or maintaining pace. Def.'s Br. [DE-14] at 7–8. The court disagrees. To

be sure, there were substantial deficiencies in the ALJ's decision in *Mascio* not present here, but the *Mascio* court considered each issue independently and specifically found that remand was in order based on the ALJ's unexplained failure to account for Mascio's limited ability to stay on task. 780 F.3d at 637–38. In fact, even after finding that the ALJ committed reversible error in failing to conduct a function-by-function analysis, the *Mascio* court went on to consider whether the ALJ properly accounted for Mascio's moderate limitation in concentration, persistence, or pace, noting that the alleged error could recur on remand, which implies it was a substantial error that could independently warrant remand. *Id.* at 637, n.6.

The Commissioner next discusses the treatment notes and medical opinions addressed by the ALJ in the RFC analysis and suggests it is "more than ample to provide the necessary window into the ALJ's rationale to allow the court to perform substantial evidence review." Def.'s Br. [DE-14] at 9–12. For example, the Commissioner points to the ALJ's consideration of evidence that from September 2020 through March 2021, Claimant participated in therapy and medication management and reported doing well and on mental status exam, she was alert and oriented, her mood was calm and euthymic, she had a normal affect, and she was noted to be attentive, had focused attention and concentration, intact memory, and good concentration, (R. 502–29); after a lapse in treatment, she returned to therapy in November 2022, and was noted to be objectively pleasant and fully engaged, (R. 760–72); she ran out of medications in January 2023, did not come back for refills because she did not like how they made her feel, and after she was restarted on Caplyta and Lamictal, her mental status exam was normal and she was noted to have mild anxiety with no impairment in mood, psychosis, cognition, memory, activities of daily living, or family problems, (R. 774–90). Def.'s Br. [DE-14] at 9 (citing (R. 24)). The Commissioner also points

out the ALJ considered evidence that Claimant's mental health issues manifested with non-compliance and lack of consistent follow-up care, and the opinions of the state agency reviewing doctors support the ALJ's mental RFC findings. *Id.* at 9–11 (citing (R. 25–26)). But "this court has recognized that noncompliance may be a symptom of mental illness."[2] *See Howe v. Kijakazi*, No. 7:22-CV-66-FL, 2023 WL 5363719, at *5 (E.D.N.C. July 31, 2023) (collecting cases), *report and recommendation adopted*, 2023 WL 5356209 (E.D.N.C. Aug. 21, 2023); *McKoy v. Saul*, No. 7:19-CV-00223-FL, 2020 WL 8084961, at *9 (E.D.N.C. Nov. 22, 2020) (finding that citing a mental health patient's medication non-compliance, without exploring the reasons underlying it, offered little in the way of substantial evidence to support the ALJ's RFC assessment), *report and recommendation adopted,* 2021 WL 76956 (E.D.N.C. Jan. 8, 2021). Furthermore, SSR 16-3p requires the ALJ to consider possible reasons for failure to comply with treatment before finding an individual's symptoms inconsistent with the evidence of record on that basis. 2017 WL 5180304, at *9–10 (Oct. 25, 2017). The ALJ does not engage is this analysis, so the evidence of non-compliance and lack of follow-up care is not "substantial evidence."

It is not apparent from the court's review of the ALJ's RFC discussion and the related treatment records and medical opinions why no pace-related limitation was necessary. (R. 22–27). Much of the Commissioner's discussion seems focused on minimizing Claimant's alleged difficulties with concentration, persistence, or pace, but the ALJ found that Claimant was moderately limited in that area, and it is not the court's role to re-weigh the evidence, *see Hancock*

[2] The court notes that Claimant was diagnosed with and treated for schizophrenia in 2021, 2022, and 2023, (R. 517–20, 760–790), which was not considered at step 2, (R. 20), despite a state agency expert's finding that it was a medically determinable impairment, (R. 112, 126). On remand, the ALJ should also consider whether Claimant's schizophrenia is a medically determinable impairment and whether her issues of medication "noncompliance and lack of consistent follow-up care," (R. 25), are willful acts or manifestations of this mental illness.

*v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citation omitted) ("[I]n reviewing for substantial evidence, [the court does] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ."). So, under Fourth Circuit precedent, the ALJ was required to account for that deficiency or explain why no limitation was necessary.

Finally, this case is materially distinguishable from the cases of *Shinaberry v. Saul* and *Sizemore v. Berryhill*, cited by the Commissioner. Def.'s Br. [DE-14] at 11–12. In *Shinaberry*, the ALJ explicitly relied on a consultative psychological opinion indicating that the claimant's "task persistence" was adequate, and the ALJ explained that a limitation to unskilled work accounted for Claimant's limitation in tolerating work-related stresses. 952 F.3d at 122. In *Sizemore*, the Fourth Circuit affirmed an ALJ's decision where the RFC included a limitation to "work only in [a] low stress [setting] defined as non-production jobs [without any] fast-paced work [and] no public contact." 878 F.3d 72, 79 (4th Cir. 2017). Here, the ALJ found that Claimant completes tasks, but it takes her longer, (R. 22), and Dr. Fox opined on initial review that Claimant could "carry out SRRTs in a setting with limited social interaction and *in a low stress setting*," (R. 91, 102) (emphasis added), which suggests Claimant would have issues with the pace of work. The ALJ, however, did not impose any pace-related limitations, e.g., low stress or non-production/fast-paces/assembly line work, did not explain why such limitations were unnecessary, and did not include any discussion regarding Claimant's ability to stay on task for a certain period of time. *Cf. Moore v. Bisignano*, No. 4:24-CV-00076-M-RN, 2025 WL 1905344, at *2 (E.D.N.C. July 10, 2025) (recognizing courts within the Fourth Circuit routinely find that where "the ALJ opted to limit Plaintiff to both simple instructions and two-hour work intervals over the course of an eight-hour

workday," it is sufficient to account for a moderate limitation in maintaining concentration, persistence, or pace) (collecting cases). Accordingly, the ALJ's failure to account for Claimant's moderate limitation in the area of concentrating, persisting, or maintaining pace in the RFC, or to explain why no limitation was necessary, requires remand.

**B. Medical Opinion Evidence**

Claimant contends the ALJ failed to properly evaluate the medical opinion evidence in conformity with the regulations. Pl.'s Br. [DE-12] at 12–16; Pl.'s Reply [DE-15] at 4–5. When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The applicable regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must consider the persuasiveness of medical opinions using five factors: (1) supportability, meaning that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions or prior administrative medical finding(s) will be"; (2) consistency, meaning that the more consistent an opinion is with other evidence in the record, the more persuasive the medical opinion will be; (3) the medical source's relationship with the claimant, which considers the length of the treating relationship, frequency of examinations, purpose of the treating relationship, extent of the treatment relationship, and whether the medical source examined the claimant; (4) specialization, meaning that "a medical source who has received advanced education and training to become a specialist may be more persuasive"; and (5) "other factors that tend to support or contradict a

medical opinion." *Id.* §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5). The most important factors are supportability and consistency, and the decision must contain an explanation of how those factors were considered. *Id.* §§ 404.1520c(a) & (b)(2), 416.920c(a) & (b)(2); *see Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023) ("Supportability is the degree to which a provider supports their opinion with relevant, objective medical evidence and explanation, and consistency is the degree to which a provider's opinion is consistent with the evidence of other medical and non-medical sources in the record."). Notwithstanding, "there is no requirement that an ALJ use any 'magic words' in making findings regarding consistency and supportability." *Tyrun W. v. O'Malley*, No. 1:23CV719, 2024 WL 4349241, at *5 (M.D.N.C. Sept. 30, 2024) (quoting *Weidner v. Kijakazi*, No. 20-1250-MN, 2022 WL 610702, at *12 (D. Del. Feb. 1, 2022) (finding the fact that the ALJ did not use "consistency" or "supportability" is not sufficient to remand where the "ALJ plainly considered the consistency of the medical opinions with the evidence of record")). "Thus, the ALJ's failure to specify which factor, i.e., supportability, consistency, or otherwise, was eroded by contrary evidence is inapposite, so long as he (1) analyzed the relevant evidence when considering the persuasiveness of the medical opinion and (2) made his analysis of that evidence clear enough for the court to meaningfully review it." *Id.*

Claimant first contends that the ALJ erred because, despite finding the state agency expert psychologists' opinions persuasive, the ALJ did not explain why he omitted their pacing and off-task limitations from the RFC. Pl.'s Br. [DE-12] at 13. Both state agency experts opined that Claimant was moderately limited in the ability to maintain concentration, persistence, or pace. (R. 85, 112). On initial review, Dr. Fox more specifically indicated that Claimant was moderately limited in her abilities to (1) maintain attention and concentration for extended periods; (2) perform

activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and (3) and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. 89–90). Dr. Fox also opined that Claimant required a low stress work setting. (R. 102). On reconsideration, Dr. Reddy found that Claimant was moderately limited in her abilities to (1) maintain attention and concentration for extended periods, and (2) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. 117–18).

The ALJ found the experts' findings generally consistent with the overall evidence and, thus, persuasive, but then stated that their mental RFC opinions were somewhat different from each other and from the ALJ's RFC, and concluded that "[b]ased on the totality of the facts and findings in file, it appears reasonable to conclude that claimant could be expected to have limitations but should be capable of performing simple, routine tasks as reflected in the mental residual functional capacity above. Thus, the opinions are partially persuasive." (R. 25). The ALJ cited no evidence supporting his conclusion, which was essentially that the opinions were persuasive to the extent they did not conflict with the RFC. This analysis, or lack thereof, is insufficient under the regulations and Fourth Circuit precedent. *See* 20 C.F.R. §§ 404.1520c(a), (b)(2) & 416.920c(a), (b)(2) (the ALJ's decision must contain an explanation of how the supportability and consistency factors were considered); *Stephen R. v. O'Malley*, No. 21-2292, 2024 WL 3508155, at *4 (4th Cir. July 23, 2024) (finding it was not enough to involve the factors of supportability and consistency where the actual analysis was "threadbare and lacked citations,"

merely noting that "[t]hese doctors' opinions were grounded in the evidence contained in the record at the time," and that they "are consistent with and supported by other medical evidence in the file and the entire record as a whole," without referencing or describe to what evidence he was referring.). Furthermore, while the Commissioner is correct that an ALJ need not adopt an opinion in its entirety simply because it is persuasive, *see Turner v. Comm'r of Soc. Sec.*, No. 23-1760, 2024 WL 2764722, at *5 (4th Cir. May 30, 2024) ("ALJs are not required to accept all components of a witness' discussion about a claimant's limitations just because the ALJ finds them to be generally persuasive.") (citing *Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019)), the court has required the ALJ to explain why the limitations opined to by sources whose opinions were found to be persuasive were not fully incorporated into the RFC when it "deprives the ALJ's decision of the requisite 'logical bridge' between the evidence and the RFC that would allow this Court to trace the ALJ's reasoning," *Loudermilk v. O'Malley*, No. 5:23-CV-449-RJ, 2024 WL 3967274, at *5 (E.D.N.C. Aug. 28, 2024) (quoting *Alonna A. v. Kijakazi*, No. CV 22-3115-CDA, 2023 WL 8373378, at *4 (D. Md. Dec. 1, 2023) (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018))). The state agency experts both opined that Claimant had a moderate limitation in concentration, persistence, and pace, and Dr. Fox specifically found that Claimant could perform simple, routine, and repetitive tasks in a low stress work setting. (R. 102). The ALJ similarly found Claimant to be moderately limited in concentration, persistence, or pace but adopted no pace-related limitation and failed to explain why or to reconcile the medical opinions with each other or the ALJ's RFC. Accordingly, this lack of explanation requires remand.

Finally, the ALJ's evaluation of the consulting psychological evaluators' opinion, dated November 12, 2022, is deficient in some but not all respects. The evaluators, Barbara Galloway,

M.A., LPA, a licensed psychological associate, and Elizabeth Shaw, Ph.D., a licensed psychologist, signed the report, which summarized Claimant's statements regarding her present illness as follows:

> Ms. Chambers was the primary source of information and is not necessarily considered to be a reliable source. She stated that she was not sure why she was being seen today for a mental health evaluation. Eventually she stated that she had been diagnosed with bipolar disorder, which she described as getting angry really fast, blacking out, and wanting to cut herself. She reported that she has disproportionate anger. She feels like nobody loves her and everyone is against her. She experiences crying spells. She reported a lack of motivation, and sometimes feels hopeless and worthless, and sometimes experiences feelings of shame or guilt. She reported occasional suicidal ideation, and reported her last episode of self-harm was last night when she submerged herself in the bathtub. She did not stay underwater for very long. She has also done things like put a paper bag over her head, burn herself, hit her head with a frying pan, drink too much water, swallow a bunch of pennies, and hit herself on the arm with a hammer. She reported that the self-injurious behaviors give her a sense of relief. She stated that she overdosed last year on aspirin. She denied current suicidal ideation, intent, or plan. She reported she sometimes sees people that she knows and black bugs. She reported she hears voices of unfamiliar people. She stated that she hears things at night like water running and someone using the bathroom. She reported some paranoia. She denied homicidal ideation. She stated she became unable to function when she was a child. However, she did not receive any outpatient mental health treatment. She saw a therapist at PORT Health Services last year and is supposed to start back with them next month. She reported that she has been hospitalized at Wilson Hospital on one occasion. She reported she was trying to kill herself. She stated she was smoking cigarettes at a gas station but then drove off and sat in her yard in the car and was burning her hand with the lighter. She stayed in the hospital for one or two weeks. She has a history of being prescribed sertraline but stated it was not effective. She reported being on other medications but does not remember the names of them.

(R. 754–55). The evaluators also conducted a mental status examination and found Claimant to be cooperative and appropriate; she exhibited euthymic mood and flat affect; her thought processes were logical, coherent, and goal-directed for the most part, although there were a few times when her answers were illogical; there was no evidence of delusions, ideas of reference, or obsessions; she reported suicidal ideation, but denied current suicidal ideation, intent, or plan, and stated that she last engaged in an act of self-injurious behavior last night; she denied homicidal ideation as

well as any history of auditory or visual hallucinations; and she did not appear to be responding to internal stimuli during the evaluation. (R. 756). Claimant was oriented, her immediate recall was intact and delayed recall was mildly impaired, her remote and recent memory appeared intact, her fund of knowledge and abstract thinking were well below average, her math skills were below average, she had moderate difficulty sustaining attention, her social reasoning and judgment appeared to be impaired, she had limited insight, and it was estimated that she was functioning within the extremely low range of intelligence. (R. 756–58). Diagnostic impressions were listed as borderline personality disorder and unspecified depressive disorder, but it was noted that collateral information to support a history of manic episodes would have been helpful to clarify the diagnoses. (R. 758–59). The evaluators concluded that,

> Based upon her history and her performance during the evaluation today, Ms. Chambers will have difficulty understanding, retaining, and following instructions. She will have difficulty sustaining attention to perform simple and repetitive tasks. She will have difficulty getting along with others, including coworkers and supervisors. She will have difficulty tolerating the stress and pressure associated with day-to-day work activity.

(R. 759). The ALJ found the opinion to be "vague and undefined" and not supported by "inconsistencies" noted in the evaluation, as well as the finding that Claimant was "not a reliable historian." (R. 26). The ALJ also found the opinion appeared to be based on Claimant's "subjective reports rather than objective findings." *Id.* The ALJ concluded that the "longitudinal evidence presented at the hearing level supports moderate limitations and the residual functional capacity" and, thus, found the opinion to be "less persuasive." *Id.*

First, Claimant contends that the ALJ did not consider whether the opinion was consistent with the longitudinal record, i.e., the consistency factor, Pl.'s Br. [DE-12] at 14, but the ALJ expressly stated when evaluating the opinion that the longitudinal evidence presented at the

hearing level supports moderate limitations and the RFC found by the ALJ. (R. 26). This implies that the ALJ found the opinion to be inconsistent with other evidence in the record, but, as with the state agency experts' opinions, the ALJ failed to actually cite any evidence in support of the conclusion, which was error. *See Stephen R.*, 2024 WL 3508155, at *4.

Second, Claimant points out that the ALJ failed to specify what inconsistencies cut against the opinion, leaving the court to guess about the ALJ's reasoning. Claimant also, relatedly, suggests the ALJ made a negative inference based on the evaluators' finding that Claimant was not necessarily a reliable source, when this could have been a result of Claimant's mental impairments. Pl.'s Br. [DE-12] at 14. The court agrees that, while it is the ALJ's role to make credibility determinations, the lack of explanation precludes the court's review of the decision in this regard. When summarizing the evaluation earlier in the RFC section, the ALJ did note an exchange where Claimant first said she did not drive but then said she drove the week prior, and when asked again said she did drive. (R. 23). Perhaps this is one of the inconsistencies to which the ALJ referred, but the court should not have to guess, and the ALJ should better explain his reasoning, particularly given the many cognitive deficits the examiner noted during the testing that could otherwise explain Claimant's inconsistencies or errors in historical reporting.

Third, Claimant suggests the ALJ did not sufficiently explain how the opinion was vague or undefined. Pl.'s Br. [DE-12] at 15. Although the opinion addressed vocationally relevant areas of functioning, such as understanding, retaining, and following instructions; sustaining attention to perform simple and repetitive tasks; getting along with others, including coworkers and supervisors; and tolerating the stress and pressure, it was the limitation, i.e., that Claimant "will have difficulty," that was vague and undefined, and "courts in this Circuit have found no error

where an ALJ characterizes a medical opinion noting a claimant's 'difficulty' in certain [areas of functioning] as vague." *See Patrick v. Bisignano*, No. 4:24-CV-00097-RN, 2025 WL 2637664, at *7 (E.D.N.C. Sept. 12, 2025) ("A medical opinion that does not quantify the limitations assessed or define certain terms may be characterized as vague.") (citing *Prince v. Kijakazi*, No. 5:22-CV-00159-M, 2023 WL 2620914, at *5 (E.D.N.C. Mar. 7, 2023), *adopted by* 2023 WL 2614525 (E.D.N.C. Mar. 23, 2023); *Williams v. Saul*, No. 3:18-CV-564, 2019 WL 3729016, at *13 (E.D. Va. July 22, 2019), *adopted by* 2019 WL 3728269 (E.D. Va. Aug. 7, 2019)). The court in *Patrick* explained that "[a]n opinion which is vague precludes the ALJ from articulating how a limitation would be supported by and consistent in the record." *Id.* (citing *Angela C. v. Comm'r, Soc. Sec.*, No. 20-CV-3069, 2021 WL 5178458, at *3 (D. Md. Nov. 8, 2021)). Accordingly, the ALJ's finding that the limitations suggested in the opinion were vague or undefined is a valid basis for concluding the opinion was "less persuasive."

Finally, Claimant contends the ALJ erred by considering that the opinion appeared to be based on Claimant's "subjective reports rather than objective findings," in violation of the Fourth Circuit precedent. Pl.'s Br. [DE-12] at 15–16. In *Shelley C.*, the Fourth Circuit held that "symptoms of MDD [major depressive disorder], like those of fibromyalgia, are 'entirely subjective'" and "because of the unique and subjective nature of MDD, subjective statements from claimants 'should be treated as evidence substantiating the claimant's impairment.'" *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 361–62 (4th Cir. 2023) (quoting *Arakas v. Comm'r of Soc. Sec.*, 983 F.3d 83, 97–98 (4th Cir. 2020)). It does appear that the ALJ found the opinion less persuasive, in part, because he believed it was based on subjective reports rather than objective findings, (R. 26), which is error. Furthermore, the evaluators did administer cognition tests that

demonstrated several deficits, including mildly impaired delayed recall, well below average fund of knowledge and abstract thinking, below average math skills, moderate difficulty sustaining attention, impaired social reasoning and judgment, limited insight, and functioning within the extremely low range of intelligence. (R. 756–58). Given the need for remand on other issues, the ALJ should also reconsider this opinion in light of the deficiencies noted.

## VI. CONCLUSION

For the reasons stated above, it is recommended that the matter be remanded for further proceedings.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 18, 2026** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed by within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and**

**Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, the 4 day of August, 2026.

Robert B. Jones, Jr.
United States Magistrate Judge